IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DON NICHOLS                                                                                          PLAINTIFF

  v.      Civil No. 15-2032

SHERIFF ANTHONY BOEN,
Franklin County, Arkansas;
and JAIL ADMINISTRATOR
JANICE KING                                                                                         DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

 This is a civil rights action filed by the Plaintiff, Don Nichols, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

 Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction. The events at issue in this case occurred when the Plaintiff was confined in the Franklin County Detention Center (FCDC). Plaintiff maintains he was subjected to unconstitutional conditions of confinement at the FCDC. Specifically, he contends the facility had: no sprinkler system; no smoke alarms; no exhaust fans; and, was overcrowded.

 Defendants filed a Motion for Summary Judgment. (Doc. 28) On October 14, 2015, a hearing was held on the Motion for Summary Judgment to allow the Plaintiff to respond orally to the Motion. Plaintiff appeared by video conference. At the conclusion of the hearing, the Plaintiff was given fourteen (14) days to submit any exhibits he desired the Court to consider. No exhibits have been submitted by the Plaintiff.

AO72A
(Rev. 8/82)

## 1. Background

Plaintiff was confined in the FCDC three separate times in 2015. These time periods are: (1) January 20, 2015 to February 6, 2015; (2) February 24, 2015 to March 17, 2015; and, (3) May 5, 2015 until May 9, 2015. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) B.

When initially booked in, Plaintiff testified that he was confined in an eight man cell with twelve men. The only items the Plaintiff was issued were a mat, a pair of pants, and a shirt--no boxers. Plaintiff was on the floor with one mat. Plaintiff testified his right arm "doesn't work." Plaintiff indicated that Sheriff Boen personally said he was "there to punish" the detainees.

Plaintiff testified that he was on a mat on the floor during his three separate incarcerations. There were times he was stepped on, and he testified he feared being trampled. Plaintiff complained to jailers about being stepped on. As a result of sleeping on the floor, Plaintiff testified his right shoulder was re-injured. He did not receive treatment for his shoulder because he did not have insurance or money to pay the bills. According to Plaintiff, his right shoulder cannot be "fixed."

It is the Plaintiff's belief that the Defendants should have done something to make the facility safer. Plaintiff testified that, while it was a non-smoking facility, tobacco smoke was constantly in the air. When there was a fire at a building near the jail, Plaintiff states that it took the jailers forty-five (45) minutes to evacuate the jail. There were no fires that were out of control at the facility while Plaintiff was housed there.

Plaintiff testified the only physical injury he suffered as a result of these conditions was being stepped on and this caused his shoulder to be re-injured. However, he testified he suffered mental anguish at the thought of being locked in without being able to get out if a fire did occur.

When he complained about the overcrowding and was in the process of filing this lawsuit, Plaintiff testified he was put in the hole.[1] He was in the hole for one week and then returned to a cell with nine inmates in it. He again slept on the floor.

By affidavit, Sheriff Boen indicates that in January of 2015, the detention center was undergoing a process to upgrade its fire detection and suppression system. *Defendants' Exhibit A*. The upgrade was as a result of an inspection by the State Fire Marshal in late October of 2014. *Id.* The State Fire Marshal identified the changes and upgrades that were required. *Id.* Sheriff Boen secured an estimate of the cost of the changes and upgrades and secured emergency funding. *Id.* In April and May of 2015, the upgrades were implemented. *Id.* On June 15, 2015, the State Fire Marshal inspected the detention center again and approved of the changes and upgrades. *Id.* Sheriff Boen also notes that there were no fires while the Plaintiff was housed in the FCDC. *Id.*

With respect to the Plaintiff's housing, Sheriff Boen asserts that the jail records indicate that Plaintiff, upon being booked in on January 20, 2015, was put in a cell with other detainees. *Defts' Ex.* A. However, within twenty-four (24) hours, at his request, jail records indicate Plaintiff was moved into a cell on his own. *Id.*

By affidavit, Janice King states that in January of 2015, her job duties did **not** include managing detainee "housing assignments or maintaining the jail physical conditions, including fire detection and fire suppression equipment." *Defts' Ex.* B. She states that "[o]ther detention center employees, along with Sheriff Boen, managed the detention center's physical conditions, including fire detection and fire suppression equipment." *Id.*

---

[1] This case was opened on February 13, 2015.

## **II. Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## **III. Discussion**

Defendants argue that: (1) Plaintiff cannot provide proof that any Defendant was deliberately indifferent to the conditions of his incarceration; (2) they are entitled to qualified immunity in their individual capacities; (3) there is no proof that any alleged violation was due to an unconstitutional policy, practice, or custom of Franklin County; and, (4) Plaintiff is unable to provide any proof he was injured or damaged as a result of the conditions he was confined under.

AO72A
(Rev. 8/82)

**(A). Applicable Law**

The Court of Appeals for the Eighth Circuit has adopted the same legal standard for detainees that applies to convicted inmates, thus the date of Plaintiff's conviction becomes irrelevant for purposes of determining whether Defendants are entitled to summary judgment on this issue. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (adopting the Eighth Amendment's deliberate indifference standard as the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety").

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (internal quotation marks and citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing

deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

As noted above, Plaintiff contends his rights were violated by the conditions under which he was confined at the FCDC. Specifically he complains about the following conditions: overcrowding, and the lack of fire detection and prevention equipment.

**(B). Overcrowding**

The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). However, "[c]onditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (*citing Wilson*, 501 U.S. at 304).

Plaintiff presented no evidence suggesting that the overcrowding led to deprivations of essential food, medical care, or sanitation, or increased violence among other inmates or otherwise made the conditions intolerable. *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991). Similarly, merely having to sleep on a mattress on the floor does not state a claim of constitutional dimension. *Williams v. Delo*, 49 F.3d 442, 444-46 (8th Cir. 1995).

### (C). Fire Detection & Suppression Equipment

"Prisoners have the right not to be subjected to the unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions." *Hoptowit v. Spellman*, 753 F.2d 779, 783-84 (9th Cir. 1985); *see also Hadix v. Johnson*, 367 F.3d 513, 528-30 (6th Cir. 2004) (review of cases involving fire safety). Here, Plaintiff contends there were no smoke detectors, fire alarms, or sprinklers. While this may be true, the uncontradicted evidence presented by Defendants is that the process of upgrading the fire detection and suppression system had begun before Plaintiff was incarcerated in the FCDC. By mid-2015, the upgrades to the system had been approved by the State Fire Marshal. There is simply no evidence of deliberate indifference on the part of Sheriff Boen. Further, Janice King's affidavit that she was not responsible for ensuring the FCDC met applicable fire codes or fire prevention standard is uncontradicted.

### IV. Conclusion

For the reasons stated, I recommend that the Defendants' Summary Judgment Motion (Doc. 28) be **GRANTED and this case be DISMISSED with prejudice.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of November, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE